Filed 8/27/24  Doe v. University of Southern California CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA et al., <br><br> Defendants and Respondents. | B324253 c/w B325706 <br><br> (Los Angeles County Super. Ct. No. 21STCV45745) |

APPEAL from an order of the Superior Court of Los Angeles County, Kristin Escalante, Judge.  Affirmed.

Jane Doe, pro. per., for Plaintiff and Appellant.

Kjar, McKenna & Stockalper, Patrick E. Stockalper and Hannah R. Hogoboom for Defendants and Respondents.

————————————

Plaintiff and appellant Jane Doe appeals from a judgment of dismissal pursuant to an order to show cause, and as an independent basis for dismissal, an order sustaining the demurrer of defendants and respondents University of Southern California (USC), Alfred E. Mann Institute for Biomedical Engineering (the Institute), and Dr. Gerald Loeb.  On appeal Doe contends the trial court erred by sustaining the demurrer, denying discovery, and denying leave to amend.  We conclude the demurrer was properly sustained because it is not reasonable to infer from the allegations of the complaint that any of the defendants was the proximate cause of Doe's injuries; the doctrines of res ipsa loquitor and strict products liability do not apply.  The trial court did not abuse its discretion by denying discovery, and Doe has not shown that she could amend the complaint to state a cause of action.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe, representing herself, filed her original complaint against USC, the Institute, and Loeb in Santa Clara County in November 2020.  USC and the Institute filed a demurrer, a motion to strike portions of the complaint, and a motion to transfer venue.  The trial court overruled the demurrer as to several claims, expressly stating that the allegations of the complaint must be taken as true, and therefore a claim had been stated, but sustained the demurrer as to other claims with leave to amend.  The Santa Clara court transferred the case to Los Angeles County.

2

After further proceedings, Jane Doe ultimately filed the operative second amended complaint against the same defendants in April 2022.  She alleged causes of action labeled res ipsa loquitor, strict liability, stalking, negligence, intentional and negligent infliction of emotional distress, battery, assault, sexual battery, violation of the California Tom Bane Civil Rights Act (Bane Act; Civ. Code, § 52.1), gender violence, and conspiracy based on the following allegations:  On May 23, 2018, as she was walking on the campus of Santa Clara University, she felt a sharp pain in her genital area.  When she arrived home, she found a stiff wire-like object in her vulva that an expert identified as a device with semiconductor components.  On subsequent occasions, she found similar objects in her genital area.  The objects were found to be consistent with sencil technology, which are hair-like sensors that were the subject of patent applications filed by or assigned to USC, the Institute, and Loeb in 2005 and 2006.  Doe believes the defendants control the manufacture, distribution, storage, and security of sencil technology.  The sophisticated technology is not readily available in the ordinary course of commerce and its dissemination is limited.

Doe does not allege how the technology was implanted in her body.  She speculates that it could have been implanted "by any number of methods," such as remotely from a distance.  She alleged the defendants were in a unique position to identify delivery methods for their technology.  She noted that the Central Intelligence Agency, in 1975, revealed the ability to deliver technology through nearly undetectable darts.  The complaint does not allege that Doe was in the vicinity of any defendant or received medical treatment from any defendant.

The defendants filed a demurrer on several grounds, including failure to state a cause of action, which Doe opposed. Doe filed two motions to compel discovery responses, which the defendants opposed.

Doe filed a motion for leave to amend the causes of action in the second amended complaint for res ipsa loquitor and negligence per se, which the defendants opposed.

The trial court ordered all discovery proceedings stayed until after the hearing on the demurrer.

A hearing was held on July 7, 2022. The hearing on the demurrer to the second amended complaint was continued. The trial court, on its own motion, issued an order to show cause why the second amended complaint should not be dismissed as factually frivolous and based on delusional allegations. The court stayed the action pending resolution of the order to show cause, including staying discovery. The parties filed pleadings in response to the order to show cause.

The demurrer and the order to show cause were heard on August 17, 2022, and the trial court took the matters under submission.

Later that day, in response to the order to show cause for being factually frivolous and based on delusional allegations, the trial court dismissed the second amended complaint on that ground with prejudice. The trial court summarized the relevant allegations and legal authority. The court found the allegations of the second amended complaint were based on similar delusional allegations that had been dismissed in other cases. The court stated, "Even accepting the allegations that Plaintiff found hair-like sensors on her person that match the description of sensors described in patent applications filed and published by

USC professors in 2005 and 2006, Plaintiff's theory that USC professors somehow remotely implanted this technology into Plaintiff's body without access to her person is delusional. The action is grounded on the theory that Defendants could implant hair-like devices into Plaintiff's genital area while she was walking in a public area, without any access to her body. Plaintiff's purported experts provide no rational explanation for how that could happen and no such inference could arise from the facts alleged."

The court added that it had no doubt that "Plaintiff sincerely believes in the truth of her allegations, but the sincerity of the belief does not overcome the objectively frivolous basis for the claims. Further, the court notes that Plaintiff is highly educated and unusually articulate, but that does not change the court's evaluation of the key factual allegations on which the claims are based." Based on the court's analysis, the court ordered the action dismissed.

In addition, as an independent basis for the dismissal order, the trial court sustained the demurrer to the second amended complaint without leave to amend and ordered the case dismissed with prejudice. The court stated that to the extent any claim was based on an allegation that the defendants were somehow liable for the actions of an unknown person who implanted technology, the claims lacked merit. Plaintiff had not sufficiently alleged that USC had any duty to Plaintiff regarding third parties' use of USC's purported technology. There was also no allegation that the technology was ever placed in the stream of commerce. For these and other reasons not articulated, the court sustained the demurrer without leave to amend as an independent basis for the court's dismissal order.

The trial court entered an order of dismissal on August 17, 2022. Doe filed a motion for reconsideration, which the trial court denied. Doe filed a timely notice of appeal.

## DISCUSSION

### A. Standard of Review

First, we review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) Second, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend. (*Ibid.*) Under both standards, the appellant has the burden of demonstrating that the trial court erred. (*Ibid.*) An abuse of discretion is established when "there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

In this case, Doe contends the Los Angeles court erred by reversing a ruling by the Santa Clara court overruling in part the demurrer to the original complaint. At this stage, however, we conduct a de novo review of the complaint to determine whether it states a cause of action. We are not bound by the rulings of the lower court in our review.

## B.    Causation Theories

Doe concedes her complaint fails to allege as to any cause of action how the defendants caused her injury because she does not know how the sencil device was implanted in her body.  Instead, she contends the element of causation is satisfied under two legal doctrines:  strict liability and res ipsa loquitor.  We conclude neither doctrine applies in this case.

### 1. <u>Strict Liability</u>

Doe contends the defendants are strictly liable for placing a defective, dangerous product on the market.  This theory, however, is not supported by the allegations of the complaint.

"A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."  (*Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62.)  "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves."  (*Id.* at p. 63.)

" 'The strict liability doctrine derives from judicially perceived public policy considerations, i.e., enhancing product safety, maximizing protection to the injured plaintiff, and apportioning costs among the defendants.  [Citations.]  Where these policy justifications are not applicable, the courts have refused to hold the defendant strictly liable even if that

defendant could technically be viewed as a " 'link in the chain' " in getting the product to the consumer market.  [Citation.]  In other words, the facts must establish a sufficient causative relationship or connection between the defendant and the product so as to satisfy the policies underlying the strict liability doctrine.'  [Citation.]"  (*Loomis v. Amazon.com LLC* (2021) 63 Cal.App.5th 466, 477.)

There are no allegations that the defendants in this case placed these devices in the stream of commerce, and Doe does not contend that she could amend her complaint to allege that any of the defendants manufactured or sold these devices to consumers.  Strict products liability does not apply.

## 2. **Res Ipsa Loquitor**

The other theory that Doe relies on, res ipsa loquitor, is not applicable under the circumstances of this case.  We conclude Doe's injury, the implantation of technology in her body, is not the type of accident that usually occurs only if someone is negligent.

The mere fact that a person is injured by a device is not enough to raise a presumption that the owner of the device that was used at the time of the accident was negligent.  (*Metz v. Southern Pacific Co.* (1942) 51 Cal.App.2d 260, 268 (*Metz*).)  "California cases have frequently stated that the doctrine of res ipsa loquitur may apply 'when a thing which causes injury is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the

8

defendant, that the accident arose from a want of care.' [Citation.]  This doctrine prescribes a mere rule of evidence.  The requirement that the instrumentality must be under the management and control of the defendant, in the application of the doctrine of res ipsa loquitur, does not mean, nor is it limited to, actual physical control.  It has been held to apply to the mere *right of control* of the instrument which causes the injury at the time of the accident." (*Ibid.*)

"The doctrine of res ipsa loquitur has three conditions:  '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.'  [Citation.]" (*Ybarra v. Spangard* (1944) 25 Cal.2d 486, 489 (*Ybarra*).)  "Generally, [res ipsa loquitur] applies 'where the accident is of such a nature that it can be said, in light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible.'  [Citations.]  Conversely, where no such weight of probabilities can be found, res ipsa loquitur does not apply.  [Citations.]" (*Fowler v. Seaton* (1964) 61 Cal.2d 681, 686.)

Doe contends the elements of res ipsa loquitur are satisfied by the allegations in this case.  We disagree.  The link in the causal chain that Doe must explain is how the sencil device was implanted in her body.  Even though she alleges the defendants are the developers and owners of sencil technology, the injury in this case is not the type of accident that in the ordinary course of things would occur from defendants' negligence in their role as developers and owners of that technology.  In the absence of any

9

allegations that defendants ever had access to her person, such as for medical treatment or experimentation, it is not reasonable to infer that Doe ended up with this unusual, uncommon device inside her body on multiple separate occasions because of defendants' negligence. It is equally probable, if not more probable, that Doe's injury resulted from someone's intentional conduct. Where no explanation for an injury is inherently more probable than others, the doctrine of res ipsa loquitor does not apply. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 827.) Doe seems to recognize this, by speculating that the sencils could have been implanted intentionally by someone using other technology that was generally known to exist (i.e., the CIA's undetectable darts). The technology necessary to implant devices remotely is not alleged, however, to be defendants' technology, or under their control. It does not follow from the allegation that sencils were in Doe's body that the most likely explanation is the defendants acted negligently, rather than the defendants or an unknown third party acted intentionally. The doctrine of res ipsa loquitor does not apply.

## C.    Denial of Discovery

Doe contends the trial court abused its discretion by denying her sufficient opportunity for discovery. We disagree. Without a viable complaint, the proposed discovery would be an unnecessary and burdensome additional expense to the defendants; there was no abuse of discretion in staying discovery. (See *Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 247 [without viable complaint stating a triable cause of action, stay of discovery was

10

not an abuse of discretion]; *Silver v. City of Los Angeles* (1966) 245 Cal.App.2d 673, 674–675 ["Once it is recognized that the complaint shows that plaintiff has no claim, all concerned should be spared the expense of further proceedings"].)

## D.    Leave to Amend

Finally, Doe argues the trial court abused its discretion by denying leave to amend.  However, she does not state how she could have amended the complaint to cure its defects.  No abuse of discretion has been shown, and therefore, the order must be affirmed.

## DISPOSITION

The order is affirmed.  Respondents University of Southern California, Alfred E. Mann Institute for Biomedical Engineering, and Dr. Gerald Loeb are awarded their costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


We concur:



BAKER, Acting, P. J.



KIM, J.


11